IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEAN KRAMER,               :     CIVIL NO.: 1:19-CV-01563
                          :
          Plaintiff,       :
                          :     (Magistrate Judge Schwab)
     v.                    :
                          :
                          :
ANDREW M. SAUL,            :
Commissioner of Social Security,  :
                          :
          Defendant.       :

## MEMORADUM OPINION

## I. Introduction.

Plaintiff Dean Kramer ("Kramer") brings this action under sections 205 and 1631 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  For the reasons set forth below, the Commissioner's decision will be vacated, and the case will be remanded to the Commissioner for further consideration.

## II. Background and Procedural History.

The facts and procedural history of the case, including the remand history, are well known to the parties and such will only be repeated here to the extent they bear on the issues Kramer alleges in the instant appeal. In deciding this appeal, we refer to the transcript provided by the Commissioner. *See docs. 8-1* to *8-19*. Following a remand, Administrative Law Judge ("ALJ") Therese A. Hardiman conducted an administrative hearing on May 7, 2019, via video in which Kramer, who was represented by counsel, appeared and testified. *Admin. Tr.* at 414. Per her July 3, 2019 decision, the ALJ denied Kramer's applications for benefits, concluding that Kramer had not been under a disability from February 15, 2013, the alleged onset date, through the date of her decision. *Id.* at 411-432.

On September 10, 2019, Kramer began this action by filing a complaint seeking judicial review of the Commissioner's final decision denying him benefits. *Doc. 1*. The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 7-8*. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 10*. The parties then filed briefs, and this matter is ripe for decision. *Docs. 13, 14, 15*.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

3

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Kramer is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

In order to receive Social Security benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909.[1]  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other

---

[1] Here and elsewhere, "we cite to the edition of the Code of Federal Regulations in force at the time of the ALJ's decision in this case." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 n.1 (3d Cir. 2019).

substantial gainful work that exists in the national economy.  42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]

The ALJ follows a five-step sequential-evaluation process to determine

whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a), 416.920.  Under this

process, the ALJ must sequentially determine: (1) whether the claimant is engaged

in substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and RFC.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v),

416.920(a)(4)(i)-(v).

The ALJ must also assess a claimant's RFC at step four.  *Hess v. Comm'r of

Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "that which an

individual is still able to do despite the limitations caused by his or her

impairment(s)."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d

Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see

also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1).  In making this assessment, the

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

6

**IV. The ALJ's Decision Denying Kramer's Claim.**

On July 3, 2019, the ALJ issued a decision denying Kramer benefits. *Admin. Tr.* at 411. The ALJ first concluded that Kramer met the insured status requirements of the Social Security Act through December 31, 2016. *Id.* at 417. At step one of the five-step sequential-evaluation process, the ALJ found that Kramer had not engaged in substantial gainful activity since February 15, 2013, the alleged onset date. *Id.* At step two, the ALJ found that Kramer had the severe impairment of chronic airway/lung disease. *Id.*

At step three of the sequential-evaluation process, the ALJ found that none of Kramer's impairments met or equaled the severity of the impairments listed under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 424-25.

The ALJ fashioned an RFC, considering Kramer's limitations from his impairments:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to only occasional climbing, balancing, and stooping, and never on ladders. He is limited to only occasional bilateral overhead reaching. He must avoid concentrated exposure to temperature extremes, vibration, fumes, and hazards, including heights and moving machinery.

*Id.* at 425.

In making this determination, the ALJ considered Kramer's testimony that he experiences pain in his right leg, low back, and neck; that he experiences

7

headaches, which require him to lie down; that he uses a cane "24/7" and falls without it; that he uses a walker approximately two days each week; that he alternates sitting, standing, and lying down throughout the day; and that he experiences breathing problems, which are exacerbated by walking, climbing stairs, and exposure to heat. *Id.* at 425-26. Additionally, the ALJ considered Kramer's testimony that when he reaches, he feels unstable and "wobbly;" that he experiences unbearable pain with bending and lifting; and that he lives with his sister and she does all the household chores, including caring for his four-year old daughter due to his debilitating medical conditions. *Id.*

The ALJ found that Kramer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 426.

In addition, the ALJ considered Kramer's treatment records and medical history during the relevant time period. The ALJ noted that the medical record demonstrated that Kramer was diagnosed with back pain, chronic back pain, acute back strain, lumbago, myalgia and myositis, polymyalgia, thoracic or lumbar neuritis or radiculitis, other symptoms nerves and muscles, mobility limitations, and hand and wrist strain. *Id.* at 418. The ALJ noted, however, that these

8

diagnoses were purely subjective complaints, and pain and subjective complaints are not medically determinable impairments. *Id.* at 418-19.

The ALJ further noted that the medical record reflected that Kramer was diagnosed with mild degenerative disc disease and degenerative joint disease of the lumbar spine, possible fracture L4 pars, mild degenerative joint disease of the right foot, lumbar radiculopathy, hand and wrist contusion, hypertension, hyperlipidemia, left and right lower extremity cellulitis, venous disease, allergic rhinitis, obesity, dermatitis, hemoptysis, peptic ulcer, and anxiety. *Id.* at 419. The ALJ concluded, however, that the medical record revealed only mild abnormalities, thus these conditions were nonsevere. *Id.* In forming this decision, the ALJ noted that a March 2013 imaging of Kramer's lumbar spine indicated a possible nondisplaced right L4 pars intra-articular fracture and mild degenerative changes at L3-S1 and mild facet arthropathy. *Id.* at 420. However, a follow-up MRI of the lumbar spine in October 2013, made no mention of any fracture and noted only a developmentally small canal at L4-L5, no evidence of nerve root compression, and mild bulges at L3 through S1. *Id.* Additionally, the ALJ noted that x-ray imaging of Kramer's lumbar spine in March 2013, were unremarkable. *Id.* Further, EMG and nerve conduction studies of the upper and lower extremities were normal with no evidence found of any neuropathy, myelopathy, plexopathy, or radiculopathy. *Id.*

The ALJ noted that in June 2013, Kramer underwent an orthopedic evaluation, which demonstrated that his symptoms were not radicular in nature and that the MRI was not revealing of etiology. *Id.* at 421. Upon physical examination, the treating physician noted that Kramer had no neurological deficits, and that there was no reason for surgery. *Id.* Additionally, the ALJ noted that in February 2013 and February 2015, Kramer was seen in the ER for reports of back pain and his objective examination findings were reported to be normal. *Id.* Moreover, the ALJ noted that ER records from April 2013, September 2014, and March 2015, revealed normal findings with regard to Kramer's back and lower extremities. *Id.*

The ALJ further noted that in February and March 2013, Kramer was evaluated by Dr. Robert Hynick ("Dr. Hynick"), a medical specialist who assessed Kramer's back complaints. *Id.* at 420. The ALJ noted that Dr. Hynick's treatment notes reflected normal findings as to Kramer's bilateral lower extremities. *Id.* For example, the examination found spasm in the right lumbar paraspinal region and limited lumbar range of motion with a negative straight leg raise and normal strength, and Kramer was diagnosed with a lumbar sprain. *Id.* Further, on March 5, 2013, Kramer was noted to have had moderate difficulty moving and using a cane with no other objective deficits noted. *Id.* at 420-21. The ALJ also noted that

10

Dr. Hynick's treatment notes revealed that Kramer was amplifying his symptoms on examination. *Id.* at 421.

Most significantly, the ALJ noted that there were no medically acceptable laboratory findings establishing any significant upper or lower extremity impairment; that the medically acceptable laboratory findings did not establish any actual medically determinable severe back impairment; and that the medically acceptable laboratory findings did not establish any actual medically determinable upper or lower extremity or vascular or neurological impairment. *Id.* Particularly, the ALJ noted that while Kramer had a panoply of pain complaints and related symptomatology, his subjective complaints were not supported or corroborated with regard to his benign back imaging and negative EMG and nerve conduction studies, and have not been supported or correlated in the specialty evaluations, and his longitudinal ER visits to any established medical determinable severe back, extremity, or neurological impairments. *Id.*

With respect to Kramer's pulmonary conditions, the ALJ noted that in February 2015, Kramer was diagnosed with chronic airway obstruction/lung disease. *Id.* at 426. The ALJ noted, however, that the medical record contained no evidence that Kramer received any treatment for this condition beyond inhalers, and longitudinal pulmonary findings demonstrated normal findings. *Id.*

11

Next, the ALJ analyzed the opinions of four doctors in the case.  *Id.* at 427.

The ALJ assigned great weight to the March 2013 opinion of Dr. Hynick.  *Id.* at

420.[3]  As correctly noted by the ALJ, Dr. Hynick did not opine any specific work-

related functional limitations regarding Kramer's functional capacity to work.  *Id.*

at 427.  Rather, the ALJ notes that Dr. Hynick's opinion reviews the issues raised

above as to the severity of Kramer's conditions and Kramer's ability to work.  *Id.*

In February and March 2013, Dr. Hynick limited Kramer to the following

restrictions: mostly seated work; lifting, pushing, and pulling no more than ten to

20 pounds; and engaging in no more than limited bending and twisting.  *Id.* at 743,

751-52, 758, 780-81.  The ALJ assigned great weight to Dr. Hynick's opinion,

concluding that it was supported by his specialty records and the longitudinal

evidence of record.  *Id.* at 427.

---

[3] With regard to Dr. Hynick's opinion, it is unclear which treatment records the
ALJ is referencing when citing to Exhibit 16F.  *See Admin. Tr.* at 420-21.  As
noted by the ALJ, Dr. Hynick did not opine on any specific work-related functional
limitations regarding Kramer's functional capacity to work.  *Id.* at 427.  The
medical record, however, does reflect that Dr. Hynick limited Kramer to two
different levels of work on multiple occasions in the record.  *Id.* at 742-43, 751-52,
758, 780-81.  For example, several treatment records authored by Dr. Hynick
restrict Kramer to mostly seated work; lifting, pushing, and pulling no more than
ten pounds; and limited bending and twisting.  *Id.* at 743, 751-52, 758, 780-81.
These limitations are consistent with sedentary work under the regulations.  *See* 20
C.F.R. § 404.1567(a).  Other treatment records restrict Kramer to lifting, pushing,
and pulling no more than 20 pounds; and limited bending and twisting.  *Admin. Tr.*
at 742.  These limitations are consistent with light work under the regulations.  *See*
20 C.F.R. § 404.1567(b).  Accordingly, the court notes these different work
restrictions in the record.

The ALJ considered the Employability Assessment for the Department of Public Welfare prepared by Dr. Ahmad Wardeh ("Dr. Wardeh"). *Id.* In the form, Dr. Wardeh opined that Kramer was temporarily disabled from August 2013 through August 2014. *Id.* The form also lists the diagnosis of degenerative disc disease with radiculopathy. *Id.* The ALJ assigned little weight to Dr. Wardeh's opinion, concluding that Dr. Wardeh's opinion was conclusory and unsupported with his own treatment records or the longitudinal record as a whole. *Id.*

The ALJ considered the opinion of Dr. Alakananda Chakrabarty ("Dr. Chakrabarty") and assigned little weight to her opinion. *Id.* at 428. In October 2014, Dr. Chakrabarty completed a medical source statement, opining that Kramer was capable of performing less than sedentary work. *Id.* The ALJ assigned little weight to Dr. Chakrabarty's opinion, concluding that Dr. Chakrabarty provided no explanation in terms of signs or laboratory findings to support her limitations, and that Dr. Chakrabarty's opinion was not well-supported or consistent with her own findings and longitudinal evaluations of record. *Id.*

Finally, the ALJ considered the opinion of Dr. Barclay Wilson ("Dr. Wilson"). *Id.* In December 2018, Dr. Barclay opined that Kramer was diagnosed with a herniated lumbar disc disease. *Id.* at 875. As a result, in a medical source statement, Dr. Wilson opined that Kramer could sit and stand for 20 minutes at a time; could sit, stand, and walk for less than two hours in an eight-hour workday;

that he could only perform jobs that permitted shifting positions at will from sitting, standing, or walking; that he required the use of a cane or other assistive device; that he could never lift or carry less than ten pounds; and that he could never twist, stoop, bend, crouch, squat, and climb stairs or ladders. *Id.* Dr. Wilson further opined that Kramer would require unscheduled breaks in an eight-hour workday; that he would be off-task more than 20 percent of the time; and that he would likely be absent about four days per month due to his impairments. *Id.* at 877.

The ALJ assigned little weight to Dr. Wilson's opinion, concluding that Dr. Wilson offered no actual signs or laboratory findings to support his opinion. *Id.* at 429. Additionally, the ALJ explained that Kramer's back impairment was not severe, and that the medical record failed to contain any medically acceptable laboratory findings establishing any actual medically determinable neurological, neck, or upper or lower extremity impairments, and that Dr. Wilson offered no basis for the nature of his opinion. *Id.* The ALJ further explained that while Dr. Wilson was a treating source, his opinion was unsupported and inconsistent with his own treatment records and the longitudinal record as a whole. *Id.*

At step four of the sequential-evaluation process, the ALJ concluded that Kramer was capable of performing his past relevant work as a pharmacy assistant and a pharmacy technician. *Id.* at 429. The ALJ then continued to step five and

14

made the alternative finding that Kramer could perform other jobs in the national

economy, including working as an order clerk, an office helper, and a laundry

worker.  *Id.* at 430-31.

**V. Discussion.**

On appeal, Kramer challenges the ALJ's decision on two bases: (1) that the

ALJ erred in failing to find a severe back impairment despite the directives of the

Appeals Council and objective evidence of degenerative disc disease; and (2) that

the ALJ's RFC determination is not supported by substantial evidence because the

ALJ failed to weigh the opinion evidence in accordance with the appropriate legal

standards.  *Doc. 13* at 9.  Because we conclude that the ALJ's RFC assessment is

not supported by substantial evidence, we will vacate the Commissioner's decision

and remand this case to the Commissioner for further consideration.

**A. Substantial Evidence Does Not Support the RFC Assessment.**

On appeal, Kramer challenges the ALJ's RFC determination.  *Doc. 13* at 16-

21.  Specifically, Kramer argues that the RFC is not supported by substantial

evidence because the ALJ failed to appropriately weigh the opinion evidence of

record.  *Doc. 13* at 16-21.  In relevant part, Kramer avers that the ALJ erroneously

assigned "little" weight to opinions of Drs. Wardeh, Chakrabarty, and Wilson,

explaining that their opinions were not explained in terms of signs and laboratory

findings; and that Kramer did not have a severe back impairment to support their physical examination findings, and work restrictions. *Doc. 13* at 18. Kramer asserts, however, that Drs. Wardeh, Chakrabarty, and Wilson all opined that he suffers from a severe back condition, which limits his ability to perform work; that the opinions of Drs. Wardeh, Chakrabarty, and Wilson are well-supported by the medical record; and that the ALJ rejected these opinions due to her refusal to acknowledge the objective medical findings, which demonstrated that Kramer's back impairment was severe. *Doc. 13* at 18-21. Kramer further contends that Drs. Chakrabarty and Wilson were the only two physicians of record who opined on actual functional limitations concerning Kramer's ability to perform work. *Doc. 13* at 20-21. Per Kramer, the ALJ discounted the opinions of Drs. Chakrabarty and Wilson and assigned "great" weight to the opinion of Dr. Hynick, while acknowledging that he did not opine on any specific work-related functional limitations regarding Kramer's functional capacity to perform work. *Doc. 13* at 20. Because the ALJ failed to rely on a functional assessment from a physician in crafting the RFC, Kramer alleges that the RFC is not supported by substantial evidence and a remand is warranted. *Id.*

In response, the Commissioner argues that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Doc. 14* at 21. Additionally, the

16

Commissioner asserts that the Third Circuit has stated that an ALJ "is not precluded from reaching RFC determinations without an outside medical expert review of each fact incorporated into the decision." *Doc. 14* at 21. Accordingly, the Commissioner contends that the ALJ reasonably found the opinions of Drs. Wardeh, Chakrabarty, and Wilson were unsupported by the record as a whole. *Doc. 14* at 24. In doing so, the Commissioner avers that the ALJ relied upon evidence that exceeds the "not high" threshold contemplated by the substantial evidence standard, and thus the ALJ's decision should be affirmed. *Doc. 14* at 26.

It is well established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). In crafting the RFC, the ALJ must consider all the evidence of record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *See Burnett*, 220 F.3d at 121 (internal citations omitted); *see also* SSR 96-8p, 1996 WL 374182, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'"). Under the regulations, medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066). It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects.") (quoting *Mason*, 994 F.2d at 1066).

While the court recognizes that the RFC is an administrative finding, rather than a medical finding, "[t]here is an undeniable medical aspect to an RFC determination." *Barnett v. Berryhill*, No. 3:18-CV-637, 2018 WL 7550259, at *4 (M.D. Pa. Dec. 10, 2018). In pertinent part, the RFC entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. *Id.*; *Nofsker v. Saul*, 3:20-CV-00193, 2021 WL 103661, at *9-10 (M.D. Pa. Jan. 12, 2021). Therefore, "rarely can a decision be made regarding [a] claimant's RFC without an assessment from a physician regarding [the] functional abilities of [a] claimant." *See Donat v. Berryhill*, No. 17-5096, 2018 WL 3186953, at *4 (E.D. Pa. Jun. 28, 2018); *see also Gormont v. Astrue*, No. 11-2145, 2013 WL

791455, at *7 (M.D. Pa. Mar. 4, 2013); *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence"). Further, while "an ALJ is entitled to resolve conflicts in the evidence and determines the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *See Donat*, 2018 WL 3186953, at *4; *see also Doak*, 790 F.2d at 29; 20 C.F.R. § 404.1545.

Guided by these legal tenets, the court finds that the ALJ's RFC determination is not supported by substantial evidence. In determining that Kramer had the RFC to perform "a full range of work at all exertional levels" with additional limitations to address his medical impairments, the ALJ considered the opinions of Drs. Hynick, Wardeh, Chakrabarty, and Wilson. *Admin. Tr.* at 427-429. Among these four medical opinions, Drs. Chakrabarty and Wilson were the only two physicians of record who provided an assessment of Kramer's functional capacity to perform work. *See id.* at 261-65, 875-78.

At the outset, the ALJ considered the opinion of Dr. Hynick and assigned his opinion "great" weight. *Id.* at 427. The ALJ reasoned:

19

> Although he did not opine any specific work-related functional
> limitations when he refers to prior restrictions, the opinion reviews the
> issues and raised above as to severity and the claimant's ability to
> work. Dr. Hynick's opinion is supported in his opinion, his records,
> the specialty records, and the longitudinal evidence of record.

*Id.* at 427.

The ALJ also considered the opinions of Drs. Wardeh, Chakrabarty, and
Wilson and assigned their opinions "little" weight. *Id.* at 427-29.  In sum, the ALJ
reasoned that the opinions of Drs. Wardeh, Chakrabarty, and Wilson were not
explained in terms of signs and laboratory findings; that despite their physical
examination findings, the medical record did not reflect that Kramer had a severe
back condition; and that their opinions were not well-supported or consistent with
their own treatment records and the longitudinal record as a whole.  *See id.* at 427-
429.

In discounting all of the other medical opinions of record and assigning
"great" weight to Dr. Hynick's opinion, which provided no specific work-related
functional limitations, the ALJ relied on no medical opinion regarding Kramer's
functional capacity to perform work.  The court finds this problematic, as it
appears that the ALJ based the RFC upon her own lay interpretation of the medical
evidence.  As mentioned above, as a lay person, the ALJ is not permitted to
interpret raw medical data when evaluating a claimant's functional capacity.  *See
Donat*, 2018 WL 3186953, at *4; *see also Glahn v. Berryhill*, No. 3:16-CV-592,

2018 WL 3233367, at *14 (M.D. Pa. March 29, 2018); *Doak*, 790 F.2d at 29.  As often stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong."  *See Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *16 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990));  *see also Glahn*, 2018 WL 3233367, at *14.

The medical record simply does not support a finding that Kramer can perform "a full range of work at all exertional levels."  Dr. Wardeh opined that Kramer was temporarily disabled; Drs. Chakrabarty and Wilson both opined that Kramer was capable of performing less than sedentary work; and Dr. Hynick opined no specific work-related functional limitations at all, but noted at multiple times in the record that Kramer was capable of performing mostly seated work, lifting and carrying ten to 20 pounds, and bending and twisting on a limited basis—consistent with sedentary and light work under the regulations.  *Admin. Tr.* at 427-29, 742, 751-52, 758, 780-81.  No physician suggested that the activity Kramer could perform was consistent with performing a full range of work at all exertional levels, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.

21

Therefore, because the ALJ improperly relied on Dr. Hynick's opinion in crafting the RFC, we find that the ALJ's RFC assessment is not supported by substantial evidence.  Accordingly, the Commissioner's decision to deny Kramer disability benefits will be vacated and the case will be remanded for further consideration.

### B. Kramer's Remaining Claims of Error.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's improper reliance on Dr. Hynick's opinion in crafting the RFC, we will not address Kramer's remaining claims of error. Kramer's "additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id.*

**VI. Conclusion.**

      For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration.  An appropriate order follows.

*<u>S/Susan E. Schwab</u>*
Susan E. Schwab
U.S. Magistrate Judge